# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SPROWLS,<br>               **Plaintiff,**<br>   v.<br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>               **Defendant.** | NO. EDCV 17-499-KS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

James Sprowls ("Plaintiff") filed a Complaint on March 16, 2017, seeking review of the denial of his application for a period of disability, disability insurance ("DI"), and supplemental security income ("SSI"). On April 19, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On May 31, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 30.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 17.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative,

1

remanded for further proceedings. (*See id.* at 18.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On October 18, 2013, Plaintiff, who was born on May 17, 1969, protectively filed applications for a period of disability, DIB, and SSI.[1] (*See* Administrative Record ("AR") 160, 168.) Plaintiff alleged disability commencing May 31, 2013 due to: congestive heart failure; back problems; and "hearing." (*Id.* 211.) Plaintiff previously worked in construction as a drywall applicator (DOT 842.684-014). (*Id.* 21, 212.) After the Commissioner denied Plaintiff's applications initially and on reconsideration, Plaintiff requested a hearing (*see id.* 116-17). Administrative Law Judge Michael D. Radensky ("ALJ") held a hearing on July 15, 2015 (*id.* 28-56). Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") David Reinhart. (*Id.*) On August 11, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (*Id.* 14-23.) On January 18, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-7.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. (AR 16.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since his May 31, 2013 alleged onset date. (AR 16.) The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the neck and back; obesity; diabetes mellitus; history of congestive heart failure; and a history of methamphetamine abuse. (AR 16.) The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the

---

[1] Plaintiff was 44 years old on the application date and thus met the agency's definition of a younger person. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

2

severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 16-17.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except as follows: "he can occasionally perform postural activities; no ladders, scaffolds, or ropes; and no unprotected heights or dangerous machinery." (AR 17.) The ALJ found that Plaintiff was unable to perform his past relevant work as a drywall applicator (DOT 842.684-014). (AR 21.) However, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform, citing the representative occupations of usher (DOT 344.677-014), garment sorter (DOT 222.687-014), and assembler, small products (DOT 706.684-022). (AR 21-22.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 22.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v.*

3

*Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

The sole issue in dispute is whether the ALJ properly evaluated the credibility of Plaintiff's statements about the severity of his symptoms and limitations. (*See* Joint Stip. at 4.)

**I.    Plaintiff's Statements**

   **A. Before the Alleged Onset Date:  December 10, 2012 Adult Function Report and Pain Questionnaire**

On December 10, 2012, nearly six months before the alleged onset date, Plaintiff completed an Adult Function Report. (AR 190-97.) Plaintiff wrote that, from the time he

4

wakes up until going to bed, he "[Does] housework. Rest[s] a lot." (AR 190.) He wrote that he has two dogs and he waters, feeds, grooms, and plays with his dogs. (AR 191.) He wrote that his conditions make it hard to put on socks, shoes, and pants and hard to wipe himself after using the toilet. (AR 191.) He wrote that he prepares his own meals daily: "sandwiches; soups; fruits; vegetables; salads; chicken." (AR 192.) Plaintiff wrote that he does the following household chores: he washes dishes and vacuums daily; he does yardwork one time per week; and does his laundry three times per week. (AR 192.) Plaintiff wrote that he sometimes needs help doing these tasks because he is too sore or stiff. (AR 192.) Plaintiff wrote that he can go out by himself and drive a car. (AR 193.) Plaintiff wrote that he goes fishing and shooting once or twice a year. (AR 194.) Plaintiff wrote that he drops a lot of things and feels he is "losing some function in left arm." (AR 195.) He wrote that he can walk one mile before needing to rest. (AR 195.) Plaintiff wrote that he uses a back brace and ankle brace "when working." (AR 196.) Plaintiff reported that he had no health insurance. (AR 197.)

On a separate pain questionnaire, Plaintiff wrote that he is always stiff and sore, he is "losing some function in left arm," and his right ankle is sometimes so sore that he limps. (AR 198.) The pain in his low back sometimes makes walking very painful. (AR 198.) Plaintiff reported that standing too long "irritates everything," and, when sitting, he found it hard to lift his feet up "too high." (AR 199.) He stated that ice, heat, and rubbing made the pain better. (AR 199.) At the time Plaintiff completed the questionnaire, he stated that he was not taking any medications. (AR 199.)

**B. After the Alleged Onset Date: March 8, 2014 Adult Function Report**

Plaintiff completed a second Adult Function Report on March 8, 2014. (AR 226-34.) In that report, Plaintiff wrote that he was "always in pain," "sometimes ha[s] difficulty walking," his right shoulder and arm "only ha[ve] about ½ power," his left knee "won't bend

for kneeling," and his heart condition leaves him "out of breath a lot." (AR 226.) Plaintiff wrote that during the day he mostly rests in bed on a heating pad or ice and tries to walk a little for exercise. (AR 227.) Plaintiff wrote that he feeds his pets. (AR 227.) Plaintiff's sister and nephew help with other pet care activities: grooming; walking; and cleaning up after the dogs. (AR 227.) Plaintiff has difficulty dressing himself, getting out of a bath, and wiping himself after using the toilet. (AR 227.) Plaintiff prepares meals daily, but he wrote that he does not "cook" any more and is limited to "fast, fast, prepared foods." (AR 228.) Plaintiff described his household chores as cleaning his room once a week, washing his clothes twice a week, and sometimes doing the dishes. (AR 228.) He wrote that he finds yard work "too physical," although he does go outside once a day to "water stuff." (AR 229.) Twice a month Plaintiff shops for groceries and toiletries. (AR 229.) Plaintiff described his hobbies and interests as "watching TV, sleeping, being in pain." (AR 230.) He wrote that he could walk a block before needing a five-minute rest. (AR 231.) Plaintiff reported that he was not taking any medication for his conditions but was in the process of switching doctors because Arrowhead Hospital was not taking his claims seriously. (AR 233.)

**C. July 15, 2015 Hearing Testimony**

A year later, at the July 15, 2015 hearing, Plaintiff testified that, although he had suffered from back problems all his life, the pain became "constant, daily" in May 2013. (AR 35.) Plaintiff testified that the only thing that helps with his back pain is lying flat on his back. (AR 36.) He testified that his back pain shoots down into his groin and right leg (AR 37) and the right side of his back is constantly swollen (AR 38). He testified that he also experiences "radiating pain" through his arms. (AR 38.) The pain causes him to experience less grip strength in both hands and he "drop[s] stuff a lot" with his right hand. (AR 38-39.) Plaintiff testified that he was prescribed Tramadol but it does not ease the pain, adding "nothing seems to work as far as pain medication goes." (AR 39.) Plaintiff also

testified that the Tramadol makes him feel sleepy and not very alert. (AR 50.) Plaintiff testified that he takes Darvocets – two or three a day – from his mom even though he does not have a prescription for them and "they seem to help better with the pain." (AR 50, 51.)

Plaintiff testified that he could lift "less than ten pounds." (AR 42.) Plaintiff testified that as soon as he stood up, he was in constant pain. (AR 42.) He also testified that he found sitting – even just for the hearing before the ALJ – "extremely painful." (AR 43.) He thought he could sit for maybe one half hour. (AR 43.) Plaintiff testified that, in an eight-hour day, he spent eight hours laying down on either ice or a heating pad. (AR 43.) Plaintiff testified that his back pain precludes him from using the pedals in a car. (AR 48.)

Plaintiff testified that his heart problems make him "real tired, short of breath." (AR 44.) He testified that he can walk about half a block before he needs to rest because he is short of breath. (AR 45.)

Plaintiff testified that he spends his days lying in bed watching TV, trying to get up and walk around the house, doing what he can to help out with his nephew's baby. (AR 48, 49.) He sometimes did the dishes or vacuumed but stated that he usually did not "get very far" with those tasks. (AR 48.) He stated that he got bored being in bed, so, when his back allowed it, he liked to walk around the neighborhood "a little bit." (AR 48-49.) However, Plaintiff testified that he can only walk around the block before needing to rest. (AR 48-49). Plaintiff testified that he does not use a computer, "occasionally" cooks for himself, and never does the laundry. (AR 50.) Plaintiff's nephew cleans up after Plaintiff's dog. (AR 52.)

\\
\\
\\
\\

## II. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

With respect to the first step, a plaintiff "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused *some* degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)) (emphasis added). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (quoting *Smolen*, 80 F.3d at 1282); *see also Reddick v. Chater*, 157 F.3d 715, 722 (1998) ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

With respect to the second step, in weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as

the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

### III. ALJ's Decision

The ALJ reviewed both of Plaintiff's function reports and his 2012 pain questionnaire in addition to his testimony. (AR 18.) The ALJ found that Plaintiff's medically determinable impairments "could *not* reasonably be expected to cause the alleged symptoms." (AR 19) (emphasis added). However, the ALJ offered no explanation for this assessment. The ALJ also found that Plaintiff's allegations of severe and debilitating symptomatology were less than fully credible because: the treatment Plaintiff received was conservative; Plaintiff admitted engaging in a "somewhat normal level of daily activity" and performing activities that required physical capabilities that "replicate those necessary for obtaining and maintaining employment"; and, lastly, the objective findings were minimal, with the medical evidence failing to support the degree of symptoms and limitations alleged. (AR 18.)

### IV. Analysis

#### A. Conservative Treatment

The ALJ's first reason for discrediting Plaintiff's testimony is that Plaintiff received conservative treatment. (AR 18.) Evidence that a severe impairment is effectively managed

9

with conservative treatment is sufficient to discount a claimant's testimony regarding the severity of that impairment. *See Tommasetti*, 533 F.3d at 1039-40; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, substantial evidence in the record does not support the ALJ's characterization of Plaintiff's treatment as conservative. To the contrary, the record shows that, in addition to over-the-counter medications and physical therapy, Plaintiff was prescribed a highly addictive narcotic, Tramadol (AR 328), and received three epidural steroid injections (AR 434, 452, 470). "This Court has previously found that spinal epidural injections are *not* 'conservative' treatment." *Hydat Yang v. Colvin*, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (emphasis added) (citing, *inter alia*, *Harvey v. Colvin*, No. CV 13–5376–PLA, 2014 WL 3845088, at *9 (C.D. Cal. Aug.5, 2014)); *see also Tommasetti*, 533 F.3d at 1039-40 (describing treatment solely consisting of anti-inflammatory medication, a TENS unit, physical therapy, and a lumbosacral corset as conservative). Accordingly, the ALJ erred in characterizing Plaintiff's treatment regimen as "conservative" and discrediting his statements about the severity of his symptoms and limitations on that basis.

### B. <u>Activities of Daily Living</u>

The ALJ also erred in citing Plaintiff's activities of daily living as a basis for discrediting his statements about the severity of his symptoms and limitations. The ALJ found that Plaintiff "engaged in a somewhat normal level of daily activity and interaction. The physical and mental capabilities requisite to performing many of the tasks described . . . replicated those necessary for obtaining and maintaining employment." (AR 18.) A claimant's daily activities bear on his credibility only if the level of activity is inconsistent with his claimed limitations. *See Reddick*, 157 F.3d at 722. Thus, an ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either: "contradict [the plaintiff's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part of

his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639; *Smolen*, 80 F.3d at 1284 n. 7. The ALJ does not find, and the record would not support, that Plaintiff's self-reported activities of daily living either contradict his statements about the severity of his symptoms or demonstrate that Plaintiff can spend a substantial part of his day performing activities that are transferable to a work setting. (*See generally* AR 18.) Furthermore, the findings that the ALJ does make regarding Plaintiff's activities of daily living, *i.e.*, that Plaintiff engages in a "somewhat normal level of daily activity" and performs tasks that require the same physical capabilities necessary for obtaining and maintaining employment, are not supported by substantial evidence.

According to Plaintiff's statements about his condition after the alleged onset date, Plaintiff spends most of the day resting in bed. (AR 43, 227.) On a daily basis, Plaintiff feeds his dog (*see* AR 227) and goes outside to "water stuff" (AR 229). Plaintiff does not perform any other pet-care activity (AR 227) nor does he perform any other household chores on a regular daily basis (*see* AR 48-50, 228). Plaintiff has difficulty dressing himself, getting out of a bath, and wiping himself after using the toilet. (AR 227.) Plaintiff no longer cooks and is limited to preparing "fast, fast, prepared foods." (AR 228.) Plaintiff tries to walk but can only walk around the block before needing to rest. (AR 48-49, 226-27, 231.) This very limited activity defies characterization as "somewhat normal" and does not demonstrate that Plaintiff retains the physical capabilities necessary to obtain and maintain employment. Accordingly, the ALJ erred in citing Plaintiff's activities of daily living as a basis for discrediting Plaintiff's statements about the severity of his symptoms and limitations.

### C. **Objective Medical Evidence**

The Court finds no error with the ALJ's determination that the objective findings were minimal and did not support the degree of symptoms and limitations alleged. The examining

physician, Robin Alleyne, M.D., a board certified internist, examined Plaintiff on February 14, 2013 and observed that Plaintiff's gait and balance were normal (AR 276), Plaintiff showed no vertebral, paravertebral, or costovertebral angle tenderness, there was no evidence of muscle spasm in Plaintiff's back, and Plaintiff's range of motion in his back was grossly normal (AR 277). Plaintiff exhibited no pain on motion in any extremity. (AR 277.) Plaintiff's range of motion in his shoulders, hips, knees, and ankles was within normal limits. (AR 277.) Dr. Alleyne concluded that Plaintiff's back, shoulder, leg, feet, and ankle examinations were all "unremarkable." (AR 278.) Dr. Alleyne assessed no functional or environmental limitations. (AR 278.)

Tam Huyn, M.D., examined Plaintiff at the Arrowhead Regional Medical Center on June 12, 2013, less than two weeks after the alleged onset date. (AR 297-98.) Plaintiff complained that he "cannot do anything or get any jobs because of his back pain." (AR 297.) However, Dr. Huyn's examination of Plaintiff' back was, like Dr. Alleyne's, "unremarkable." (AR 298.)

X-rays of Plaintiff's lumbar and thoracic spine taken on April 7, 2014 showed only mild degenerative changes. (AR 336, 337.) An x-ray of Plaintiff's cervical spine taken on April 7, 2014 showed mild cervical spine spondylosis, no vertebral body height loss or spondylolisthesis, and Plaintiff's paravertebral soft tissues were unremarkable. (AR 338.) A CT scan of Plaintiff's back, performed on October 6, 2014, revealed moderate disc space narrowing, endplate changes, and dessication at C5-6 but all other changes to Plaintiff's spine were described as mild or minimal. (AR 334-35.)

There are a few records from Jack H. Akmakjian, M.D., who began treating Plaintiff for his back pain in August 2014. (*See* AR 327-31.) Dr. Akmakjian performed a physical examination on August 25, 2014 and reported that Plaintiff experienced pain, muscle spasm,

and a limited range of motion in his cervical and lumbar spine. (AR 331.) There are no other objective findings in Dr. Akmakjian's notes. (*See generally* AR 327-31.)

Although the ALJ rightly concluded that the objective evidence did not support Plaintiff's statements about the severity of his symptoms and functional limitations, Plaintiff's "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins*, 261 F.3d at 857. Accordingly, the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record to support his adverse credibility determination, and the matter must be remanded.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: August 6, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE